**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**SAN ANGELO DIVISION**

| | | |
|---|---|---|
| **MARY C. McKENZIE,** | § | |
| **Plaintiff,** | § | |
| **vs.** | § | **Civil Action No. 6:04-CV-0055-C** |
| | § | **ECF** |
| | § | **Referred to the U.S. Magistrate Judge** |
| **JO ANNE B. BARNHART, Commissioner of Social Security,** | § | |
| **Defendant.** | § | |

**REPORT AND RECOMMENDATION**

**THIS MATTER** is before the court upon Plaintiff's complaint filed October 1, 2004, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff filed a brief in support of her complaint on July 29, 2005, Defendant filed her brief on August 22, 2005, and Plaintiff filed her reply on October 11, 2005. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge reverse the Commissioner's decision and remand this matter for further proceedings.

## I. STATEMENT OF THE CASE

Plaintiff filed an application for a period of disability and disability insurance benefits on March 21, 2002, alleging disability beginning July 6, 2001. Tr. 16, 248-51. Plaintiff's application

was denied initially and upon reconsideration. Tr. 252-55, 258-62. Plaintiff filed a Request for Hearing by Administrative Law Judge on September 26, 2002, and this matter came for hearing before the Administrative Law Judge ("ALJ") on December 2, 2003. Tr. 16, 29, 265-87. Plaintiff, represented by a non-attorney, testified in her own behalf. Tr. 269-87. The ALJ issued a decision unfavorable to Plaintiff on December 30, 2003. Tr. 13-22.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that Plaintiff met the disability insured status requirements since July 6, 2001, and that Plaintiff had not engaged in substantial gainful activity at any time since her alleged onset date. Tr. 17. He found that Plaintiff has "severe" impairments, including coronary artery disease status post a 1997 myocardial infarction, and she is status post multiple stent placements in her left anterior descending artery . *Id*. He further found that Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id*.

The ALJ discussed Plaintiff's medical treatment. Tr. 18-19. He noted that records indicated that Plaintiff had done well since her July 2001 procedure and that she was walking one to one-and-a-half miles regularly without symptoms by September 2001. Tr. 18. He noted her results on an exercise tolerance test and stated that "[o]bviously, her test results here were very good and are inconsistent with disability." *Id*. He noted Plaintiff's complaints of a reduction in exercise capacity and increased fatigue and dyspnea in December 2001, as well as another exercise tolerance test. *Id*. He noted the observations of Denver March, M.D., Plaintiff's treating cardiologist, who indicated in May 2002 that Plaintiff was doing well clinically, although she had not lost weight, did not have significant chest pain, did not need to use her nitroglycerine, exercised 3 or 4 times per week, and engaged in essentially all the activities she desired. *Id*. The ALJ noted that Dr. Marsh had

completed forms indicating that Plaintiff had a New Your Heart Association Class II heart, meaning her cardiac disease resulted in slight limitation of physical activity, with Plaintiff comfortable at rest, but experiencing fatigue, palpitations, dyspnea, or anginal pain with ordinary physical activity. *Id*. He also noted that Dr. March opined that Plaintiff's impairments did not prevent full-time work at the sedentary level of exertion. *Id*. The ALJ noted that Dr. Marsh had completed a Physical Capacities Evaluation in March 2003 indicating that Plaintiff could sit for 6 hours or more and stand/walk for 2 hours during an 8-hour workday, provided she had the opportunity to alternate between sitting and standing. *Id*. He also opined that she could lift 10 pounds frequently; and 11-50 pounds occasionally; noted no restrictions on use of the hand or feet; indicated that she could perform all postural movements occasionally; was moderately restricted against exposure to dust, fumes, and gas; and was severely restricted against exposure to temperature extremes. *Id*.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 19.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning her impairments, and their impact on her ability to work were not entirely credible. Tr. 20. He found that Plaintiff was credible in the sense that she was limited and found that she has pain and functional loss secondary to her impairments. Tr. 19-20. The ALJ noted that moderate levels of pain and functional loss were not, in and of themselves, incompatible with the ability to perform certain levels of sustained worked activity. Tr. 20. However, the ALJ found that the evidence in the record did not demonstrate that Plaintiff was disabled and therefore found that she was not credible insofar as she alleged that she was disabled. *Id*.

The ALJ found that Plaintiff could not return to her past relevant work as an inventory control clerk and "office manager" as that work requires the performance of work-related activities precluded by the limitations imposed by light work. Tr. 16, 21. He noted that on her alleged onset date of July 6, 2001, Plaintiff was considered a "younger individual"; and he further noted she was 52 years old or an "individual closely approaching advanced age" at the time of his decision. 20 C.F.R. §§ 416.963, 416.964; Tr. 21. The ALJ further found that Plaintiff has a high school education. *Id*. The ALJ found that Plaintiff retained the RFC to perform the full range of light work activity. *Id.* The ALJ applied Rules 202.14 and 202.21 of the Medical Vocational Guidelines, 20 C.F.R. Part 404, Subpt. P, App. II ("the Grids") to direct a finding of "not disabled." *Id*. He found that considering Plaintiff's RFC, as well as her age, education, and past work experience, there were a significant number of jobs in existence in the national economy that Plaintiff can perform. The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 16, 21-22.

Plaintiff submitted a Request for Review of Hearing Decision/Order and a 45-day extension for the submission of additional evidence on February 23, 2004. Tr. 11-13. A 25-day extension was granted and additional evidence was presented on March 8, 2004. Tr. 8-10. The Appeals Council issued its opinion on June 18, 2004, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request. Tr. 5-7. The ALJ's decision, therefore, became the final decision of the Commissioner.

On October 1, 2004, after being granted a 30-day extension within which Plaintiff could file a civil action in this matter, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled. Tr. 3.

## II. STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case, the ALJ found at step 5 that Plaintiff was not disabled because she retained the ability to perform work in the national economy. Tr. 16, 21-22.

## III. DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the ALJ erred by failing to apply the appropriate legal standard in evaluating the opinion of Dr. Marsh as to Plaintiff's functional limitations. Plaintiff argues that this error was prejudicial and requires remand.

### A. Whether the ALJ's determination of Plaintiff's RFC is supported by substantial evidence.

Plaintiff argues that the ALJ erred in making his RFC assessment by failing to appropriately weigh and consider the functional limitations contained in the opinion of Dr. Marsh, her treating specialist. The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton,* 209 F.3d at 456.

The record demonstrates that on March 3, 2003, Dr. March opined that on the basis of his treatment, clinical notes, and the results of objective tests, Plaintiff's symptomology corresponded

with American Heart Association Functional Capacity Class II, describing "[p]atients with cardiac disease resulting in slight limitation of physical activity" who are "comfortable at rest," although "[o]rdinary physical activity results in fatigue, palpitation, dyspnea, or anginal pain." Tr. 229. Dr. March noted by checkmark that Plaintiff experiences fatigue, which had a medical basis, specifically, the "use of medications for management of heart disease." Tr. 230. He also opined that Plaintiff's fatigue was *not* disabling to the extent that it would prevent her from working full time at a sedentary position. *Id.* (emphasis supplied). Dr. Marsh indicated that Plaintiff could sit for 6 or more hours of an 8-hour day; could stand/walk for 2 hours in a work day; and needed the opportunity to alternate sitting and standing at will throughout the day. Tr. 231. He indicated no limitations on the use of the hands or feet. *Id*. Dr. March further opined that Plaintiff should never lift over 50 pounds, could occasionally lift from 11 to 50 pounds, and could frequently lift up to 10 pounds. Tr. 232. He indicated that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, crawl, and reach above shoulder level. *Id*. He indicated mild limitation around unprotected highs and moving machinery; moderate restriction of exposure to dust, fumes, and gas; and a severe restriction as to activities involving exposure to marked changes in temperature and humidity. *Id*.

In his opinion the ALJ found that the walking and standing limitations Dr. Marsh assessed in March 2003 were not supported, particularly in light of Plaintiff's treadmill test performance of 8.5 METS without chest pain. Tr. 20. He also noted that Dr. Marsh's opinion that Plaintiff could lift up to 50 pounds occasionally was consistent with light work, light work was more appropriate in this case, and ultimately found that Plaintiff retained the residual physical capacity to perform the full range of light work. *Id*.

The record demonstrates that Plaintiff reported on her Disability Activities Questionnaire that she tires easily, her medication makes her tired, and she experiences shortness of breath if she

stands for any length of time. Tr. 45. Plaintiff further stated that her medication "knocks me out" and later stated that it made her "feel like a zombie." Tr. 47, 57.

Dr. Marsh's progress note dated October 2, 2000, notes Plaintiff's report of feeling very tried. Tr. 134. He noted on June 11, 2001, that Plaintiff reported that she was more fatigued than usual while walking. Tr. 121. On September 10, 2001, Dr. Marsh's progress note reflects Plaintiff's report of being able to comfortably walk one to 1½ miles on a regular basis. Tr. 111. Dr. March advised Plaintiff on January 7, 2002, that she must get very serious with her diet and exercise program. Tr. 105. He noted that the last Cardiolite treadmill test results, performed the previous fall, were "wonderful" and indicated that another test would be scheduled. *Id.* A progress note from January 7, 2002, indicates Plaintiff's report of decreasing her exercise from five to two days per week and being able to walk 1¼ miles without provoking anything but dyspnea. Tr. 104. On May 29, 2002, Dr. Marsh noted that Plaintiff was exercising three to four times per week and did "pretty much what she chooses," although he noted Plaintiff's report of not having energy. Tr. 95. The record indicates that Plaintiff was again hospitalized on October 17, 2003. Tr. 235. Dr. March noted on July 8, 2003, that Plaintiff was doing okay and doing most of the things she wanted to do, was tolerating her current medication schedule, and was walking on a treadmill for 15 minutes, twice a day, 3 days per week. Tr. 236.

Plaintiff argues that the ALJ failed to apply the appropriate legal standard in evaluating and weighing the opinion of Dr. Marsh, her treating specialist, as to her functional limitations. If Dr. Marsh had simply opined that Plaintiff was "disabled," or "unable to work," the ALJ would not have erred in rejecting such an opinion. This is because "[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the

Commissioner.'" *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003)(citing 20 C.F.R. § 404.1527(e)(1)).

However, the ALJ rejected the opinion of Dr. Marsh as to Plaintiff's functional limitations, stating that his opinion that Plaintiff was limited to standing/walking for a total of 2 hours per day was inconsistent with the evidence and was based on Plaintiff's reported symptoms and not on the objective findings. Tr. 20. He also found the results of Plaintiff's treadmill test performance were consistent with light work, which he indicated was "more appropriate in this case." *Id*. However, the record indicates that Plaintiff's consistently reported the fatigue she experienced as a result of her medications. Tr. 45, 47, 57, 104, 113, 121, 134. Dr. Marsh indicated the objective basis for this symptom – the medications used to manage Plaintiff's heart disease. Tr. 230. Plaintiff testified that she does not have the same stamina she once did, that her activities were limited, and that she felt "like a zombie most of the time." Tr. 280-81. Although the record demonstrates that Plaintiff undertook and maintained an exercise program, as urged by Dr. Marsh, the evidence in the record indicates that Plaintiff was walking approximately 30 minutes, or a distance of 1 to 1½ miles, as little as two, and as many as five times per week. Tr. 104, 111, 236. Plaintiff testified that she could stand up to 20 minutes at a time. Tr. 277. There is no evidence in the record which contradicts Dr. Marsh's opinion as to the standing/walking limitations that Plaintiff experienced as a result of her impairments. The findings and observations of Dr. Marsh, a treating physician, were not unsupported by the evidence. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). The ALJ rejected the standing/walking limitations contained in Dr. Marsh's opinion, found Plaintiff's allegations not credible, and indicated his own interpretation of the evidence, specifically the results of the treadmill test. However, the record is consistent with regard to Plaintiff's reports of fatigue and is also consistent as to the amount of time which Plaintiff

can stand or walk, with such complaints echoed throughout her medical records and supported by the testimony of Plaintiff and by Dr. Marsh's opinion as to her functional limitations.

Plaintiff does not argue that the ALJ erred by failing to give the opinion of her treating physician controlling weight. Rather, she argues that the ALJ erred by failing to appropriately weigh Dr. Marsh's opinion in deciding not to give such opinion controlling weight. Unless the Commissioner gives a treating source's opinion controlling weight, the Commissioner will consider six factors in deciding the weight to give to any medical opinion. 20 C.F.R. § 404.1527(d). The Fifth Circuit held in *Newton* that "an ALJ is required to consider each of the [six] factors before declining to give any weight to the opinions of the claimant's treating specialist." *Newton*, 209 F.3d at 456.

Defendant argues that the ALJ was obviously aware of the requirements of 20 C.F.R. § 404.1527 and Social Securing Ruling 96-6p (July 7, 1996), and although he did not specifically discuss the six factors set forth in § 404.1527(d), his decision "addressed those factors in a narrative fashion." Def. Brief at 3. In his opinion the ALJ noted that Dr. Marsh was Plaintiff's treating physician and discussed his treatment records. He also found that his opinion was not supported by the objective evidence in the medical record. However, the record simply does not contain substantial evidence demonstrating that Dr. Marsh's opinion was not well-supported. Although the record contains evidence that Plaintiff was, in some respects, doing well, the record is uncontroverted as to Plaintiff's continuing complaints of fatigue and her inability to stand/walk more than 2 hours per day. Defendant cites to the evidence indicating that Plaintiff was sleeping well, was not limited in most of her activities, and was engaged in a regular exercise program. However, none of these facts in the record controvert the repeated reports of fatigue and Dr. Marsh's opinion that this fatigue was caused by Plaintiff's medication regime and limited Plaintiff's functional capacity.

The RFC assessment is based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs and laboratory findings; the effects of treatment; reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. Soc. Sec. Ruling 96-8p (July 2, 1996)("SSR 96-8p")(emphasis in original). The ALJ is responsible for determining a claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)(citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* However, in weighing the evidence, the ALJ is not free to reject the uncontroverted opinions of a treating physician as to the limitations imposed by Plaintiff's impairments, solely because he has a different interpretation of the evidence. *See Frank*, 326 F.3d at 622 (where the Fifth Circuit noted in dicta that the ALJ should not substitute his own medical conclusions about the effects of the claimant's impairments).

In this matter, a careful review of the ALJ's opinion indicates that the ALJ did not address each of the factors set forth in 20 C.F.R. § 404.1527(d), even broadly reading the opinion as a narrative, as urged by the Defendant. More importantly, the limitations noted by Dr. Marsh are supported by his own treatment notes and Plaintiff's testimony and subjective complaints. The ALJ indicated his conclusion that the results of the treadmill test were "consistent with light work." This medical conclusion was not reached by any of the treatment providers in this case. The Fifth Circuit has previously noted in dicta that an ALJ should not substitute his own medical conclusions about the effects of the claimant's impairment. *See Frank*, 326 F.3d at 622. I find that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence, where the ALJ rejected

the opinion of Plaintiff's treating physician without adequately considering the factors set forth in 20 C.F.R. § 404.1527(d) and relied upon his own conclusion as to the significance of raw medical data.

I further find that this error was prejudicial. The court will not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that she was prejudiced by the deficiencies she alleges. *Carey v. Apfel*, 230 F.3d 131, 143 (5th Cir. 2000)(citing *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996)). The record demonstrates that Dr. Marsh opined that Plaintiff's fatigue was not disabling to the extent that it would prevent her from working full time at a sedentary position. Tr. 230. He further opined that Plaintiff would need an opportunity to alternate between sitting and standing at will throughout the day. Tr. 231. Sedentary work involves sitting for about 6 hours out of an 8-hour work day and occasionally lifting items weighing no more than 10 pounds. *Ripley*, 67 F.3d at 557 (citing *Lawler v. Heckler*, 761 F.2d 195, 197-8 (5th Cir.1985); 20 C.F.R. § 404.1567(a)). However, having to alternate between sitting and standing in order to work the entire day does not fit within the definition of sedentary work. *Ripley*, 67 F.3d at 557 (citing *Scott v. Shalala*, 30 F.3d 33, 34 (5th Cir.1994)). As Plaintiff notes, Dr. Marsh's opinion that she is able to stand/walk for 2 hours is consistent with sedentary level work. The ALJ found in his opinion that the issue as to the acquisition or transferability of work skills is immaterial, citing 20 C.F.R. § 404.1568. As Plaintiff correctly notes, if the ALJ had found that she retained the RFC for the full range of sedentary level work, application of Rule 201.14 (no transferable skills) would direct a finding of "disabled," while application of Rule 201.15 (transferable skills) would direct a finding of "not disabled." *See* 20 C.F.R. Part 404, Subpt. P, App. II, §§ 201.14-201.15. Further consideration of the treating physician's opinion may have a material effect on the ALJ's RFC and on the need for vocational expert testimony. Therefore, I recommend that the ALJ's decision be reversed and that this matter be remanded for further consideration of the opinions of Plaintiff's

treating physician as to the limitations imposed by her impairments and for further consideration of her RFC.

## IV. CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge reverse the Commissioner's decision and remand this matter for further proceedings in accordance with this recommendation. Upon remand, the ALJ should further consider the opinions of Plaintiff's treating physician as to the limitations imposed by her impairments and for further consideration of her RFC.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4 of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 13th day of March, 2006.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**